UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:11-CR-48-R

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

JOSE PEREZ                                                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Jose Perez's motion to suppress. Def.'s Mot. Suppress, Docket Number ("DN") 38. The Government has responded. Gov't Resp., DN 39. The Defendant has replied. Def.'s Reply, DN 42. A hearing on the Defendant's motion was held before the Court on March 13, 2012. This matter is now ripe for adjudication. For the following reasons, the Defendant's motion is DENIED.

## BACKGROUND

Defendant Jose Perez and a co-defendant, Elmer Melesio, have been indicted and charged with violating 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The criminal charges stem from their arrest on October 28, 2011, in Lyon County, Kentucky. On that day, Trooper T.J. Williams of the Kentucky State Police stopped a vehicle driven by Perez because a preceding investigation revealed that it was transporting narcotics. At approximately 10:06am, Trooper Williams arrested Perez and Melesio and advised them of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Audio and video from the scene clearly demonstrate that Trooper Williams read Perez and Melesio their *Miranda* rights. After receiving their rights, Perez and Melesio were placed in separate patrol cars while Trooper Williams and another officer, Detective Chris Garland of the Murray City Police Department, searched the vehicle.

At approximately 10:15am, Special Agent Joseph Tokarz of the Drug Enforcement

1

Agency arrived at the scene. Trooper Williams informed Agent Tokarz that Perez had been read his *Miranda* rights, and Agent Tokarz proceeded to speak with Perez in the patrol car where he was detained. Agent Tokarz did not re-read the *Miranda* rights to Perez before questioning him, but instead, reminded Perez that he had been given his rights. When asked, Perez agreed to talk, and Agent Tokarz questioned him for about 30 minutes. During their conversation, Perez indicated that he had previously cooperated with law enforcement officials in a prior narcotics case and would be willing to do so in this situation.

Agent Tokarz was the only person to question Perez at the scene of the arrest but was not the only law enforcement official to question him on October 28, 2011. The officers at the scene planned to transport Perez and Melesio to the United States Courthouse in Paducah, Kentucky for further questioning and arraignment. Because of other obligations, Agent Tokarz was not able to conduct the additional questioning of Perez at the courthouse. Knowing this, Agent Tokarz asked Detectives Chris Garland and Dan Bowman to conduct the courthouse interrogation. Before Agent Tokarz left the scene of the arrest, he introduced Perez to Detectives Garland and Bowman and informed Perez that the detectives would be asking him some additional questions.

At approximately 11:30am, Perez was transported to the United States Courthouse in Paducah, Kentucky. Perez did not speak to and was not questioned by anyone during transport. Upon arriving at the courthouse, Perez was placed in a conference room, and at approximately 12:12pm, Detectives Garland and Bowman resumed Perez's interrogation. At the suppression hearing, Detective Garland testified that he did not read the *Miranda* rights to Perez prior to questioning. Instead, much like Agent Tokarz, Detective Garland claimed that he reminded Perez of his rights and asked him whether he understood those rights. Detective Garland's

2

testimony conflicts with the Government's brief, which concedes that "the two detectives who interviewed Perez at the courthouse never personally advised him of his Miranda rights . . . ." Gov't Resp., DN 39, p. 4.  For the purposes of this opinion, the Court finds that Detectives Garland and Bowman did not read or reminded Perez of his *Miranda* rights prior to initiating the courthouse interrogation.

Perez now seeks to suppress all statements he made to Detectives Garland and Bowman during the courthouse interrogation. Perez argues two grounds for suppression. First, he claims that his statements were obtained in violation of the Fifth Amendment because his *Miranda* rights were not re-administered to him prior to the courthouse interrogation. In the alternative, Perez argues that even if the *Miranda* rights given by Trooper Williams at the time of his arrest were still in force, he did not knowingly, voluntarily, and intelligently waive those rights when speaking to Detectives Garland and Bowman during the courthouse interrogation.

## DISCUSSION

The parties agree that the questioning of Perez at the courthouse was a "custodial interrogation" for purposes of the Fifth Amendment and *Miranda*. As such, any statements made by Perez during that interrogation would require suppression if Perez was not informed of his Fifth Amendment rights or did not knowingly, voluntarily, and intelligently waived those rights. Based on the facts, Perez's motion to suppress raises two issues. First, whether the *Miranda* rights given by Trooper Williams were still in force when Perez was interrogated two hours after arrest by officers who did not administer the initial warnings. Second, if the *Miranda* rights were still in force, whether Perez knowingly, voluntarily, and intelligently waived those rights when speaking with Detectives Garland and Bowman.

## I. The *Miranda* warnings were still in force during the courthouse interrogation.

Perez first argues that any statements made during the courthouse interrogation must be suppressed because he was not informed of his *Miranda* rights prior to questioning by Detectives Garland and Bowman. The Court finds that, under the totality of the circumstances, the *Miranda* warnings given by Trooper Williams at the time of Perez's arrest were still in force when Perez was questioned by different officers approximately two hours after arrest.

Audio and video evidence presented by the Government at the suppression hearing shows that Trooper Williams administered the *Miranda* warnings to Perez and Melesio shortly after their arrest. After reading the defendants their rights, Trooper Williams turns to Perez and says, "Ok?" Perez acknowledges that he understands the rights with an affirmative nod of his head. Ample evidence at the suppression hearing, including Perez's own testimony, demonstrated that Perez speaks and understands the English language. As such, the Court finds that Perez understood his rights as they were given at the time of his arrest. Because the *Miranda* rights were properly given and understood, the issue becomes whether the acknowledgement of those rights and the potency of Perez's understanding became "stale" prior to the courthouse interrogation.

There is no *per se* rule that requires a suspect to be re-advised of his *Miranda* rights after the passage of a specific amount of time or a change in questioners. *See United States v. Weekly*, 130 F.3d 747, 751 (6th Cir. 1997) ("[A] number of circuits have ruled that re-warning is not required simply because time has elapsed.") (collecting cases); *Jarrell v. Balkcom*, 735 F.2d 1242, 1254 (11th Cir. 1984) ("[T]he fact that [the defendant] confessed to a state officer other than the one who administered the *Miranda* warnings, does not render the warnings insufficient . . . ."). Instead, courts apply a "totality of the circumstances" test to determine whether

statements by a defendant should be suppressed because intervening circumstances caused the previously-administered warnings to lose their applicability. *See Weekley*, 130 F.3d at 751.

In the present case, Perez was arrested at 10:06am and given his *Miranda* rights almost immediately thereafter. Beginning sometime after 10:15am, Agent Tokarz interviewed Perez intermittently at the scene of the arrest for about 30 minutes. Agent Tokarz did not re-administer the *Miranda* warnings to Perez at that time, but he did remind Perez of them. At no point while talking to Agent Tokarz did Perez affirmatively invoke either the right to remain silent or the right to an attorney. In fact, testimony at the suppression hearing showed that Perez voluntarily spoke with Agent Tokarz. Except for Agent Tokarz, no other law enforcement officials questioned Perez until the courthouse interrogation. Before leaving the scene, however, Agent Tokarz introduced Perez to Detectives Garland and Bowman and told Perez that the detectives would be asking him some additional questions.

At approximately 11:30am, Perez was transported from the scene of the arrest to the United States Courthouse in Paducah, Kentucky. Upon arrival at the courthouse, Detectives Garland and Bowman resumed Perez's interrogation at approximately 12:12pm. At no point did the detectives re-read or remind Perez of his *Miranda* rights.

The evidence shows that Perez was given his *Miranda* rights about two hours before the courthouse interrogation, that Agent Tokarz reminded him of those rights at some point during the interim, and that Agent Tokarz introduced Perez to the detectives that would be asking him some additional questions. Given the totality of the circumstances, the Court finds that the *Miranda* warnings given by Trooper Williams were still in force at the time of the courthouse interrogation. The record contains no indication that Perez did not understand his *Miranda* rights when they were given or that he invoked them prior to the courthouse interrogation.

Additionally, there is simply no basis in the record for finding that those warning lost their potency because of intervening circumstances or the passage of long periods of time between administration of the rights and interrogation. Accordingly, Perez's statements during the courthouse interrogation will not be suppressed because the *Miranda* rights given by Trooper Williams were still in force at the time of the interrogation.

**II.     Perez knowingly, voluntarily, and intelligently waived his *Miranda* rights.**

The Court has found that the *Miranda* rights given to Perez upon arrest were still in force during the courthouse interrogation. Perez argues that even if the *Miranda* rights were still applicable, statements he gave during the courthouse interrogation must be suppressed because he did not knowingly, voluntarily, and intelligently waive his rights. "Unless a suspect knowingly, voluntarily, and intelligently waives [his *Miranda*] rights, a court will exclude statements made as a result of an involuntary waiver." *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir. 2000) (citing *Pennsylvania v. Muniz*, 496 U.S. 582, 589 (1990)).

The Government bears the burden of proving, by a preponderance of the evidence, that a defendant voluntarily waived his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtain in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence."). To determine whether a suspect has validly waived his right, a trial court should consider the following factors:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the investigation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

In the present case, the Government has shown that Perez knowingly, voluntarily, and intelligently waived his *Miranda* rights. First, there is no evidence in the record, and none of the officers at the suppression hearing, nor Perez, himself, testified that Perez asked for a lawyer or invoked his right to remain silent during the courthouse interrogation. *See North Carolina v. Butler*, 441 U.S. 369 (1979) (reaffirming the rule that silence by a defendant is insufficient to invoke the rights). In fact, the testimony of Detective Garland shows that Perez willingly spoke with the detectives during the hour-long courthouse interrogation. Additionally, there is no evidence of intimidation, coercion, or deception. Although Perez told Agent Tokarz that he had previously worked with law enforcement in a prior narcotics case and would be willing to do so in the present action, there is no indication that any of the interrogating officers promised Perez anything in return for his cooperation which coerced Perez into waiving his *Miranda* rights. Second, the Government has shown Perez was aware of the nature of his rights and the consequences of abandoning them. Audio and video from the scene of the arrest shows that Perez acknowledged understanding his rights when they were read by Trooper Williams. Furthermore, Perez testified that he had had worked with the Government in a criminal case of a similar nature on a prior occasion, and this was not the first time he has been read his *Miranda* rights. As such, the Court finds no indication that he did not understand his rights or the consequences of abandoning them.

Based on the evidence presented at the suppression hearing, and under the totality of the circumstances, the Court finds the Government has proven that Perez voluntarily waived his *Miranda* rights during the courthouse interrogation. Accordingly, none of the statements that

Perez made during that interrogation will be suppressed.

## CONCLUSION

For the foregoing reasons, the motion to suppress by Defendant Jose Perez is DENIED.